# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BLUE CROSS AND BLUE SHIELD OF ALABAMA; MUNICIPAL WORKERS COMPENSATION FUND, INC.,** | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 06-CV-524-MEF-VPM** |
| **PFIZER, INC., WARNER-LAMBERT COMPANY LLC; WARNER-LAMBERT COMPANY; PARKE-DAVIS, A DIVISION OF WARNER-LAMBERT COMPANY AND WARNER-LAMBERT COMPANY LLC; DAVID LONGMIRE,** | ) ) ) ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

Defendants Pfizer Inc. (incorrectly identified in the Complaint as "Pfizer, Inc."), Warner-Lambert Company, Warner-Lambert Company LLC and Parke-Davis, a division of Warner Lambert Company LLC and Warner-Lambert Company (collectively, the "Removing Defendants"), hereby oppose Plaintiffs' Motion to Remand To State Court and Memorandum in Support Thereof ("Plaintiffs' Motion"). Although Defendants oppose

Plaintiffs' Motion, Defendants respectfully submit that, for the reasons stated in Defendants' Motion To Stay All Proceedings Pending Transfer to Multidistrict Litigation Proceeding (filed on July 21, 2006), this Court need not and should not rule on Plaintiffs' Motion and that the most appropriate forum to consider whether there is federal jurisdiction over this case is the multidistrict litigation court that is handling the issues at dispute here.

This Court has jurisdiction over this matter because, just like in *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), Plaintiffs here have fraudulently joined a non-diverse individual in a deliberate attempt to evade federal jurisdiction and to avoid having their claims against the Removing Defendants regarding the alleged off-label promotion of the prescription drug Neurontin resolved in the appropriate federal forum that is already addressing these very claims – the Multidistrict Litigation pending before Judge Patti Saris in the District of Massachusetts (the "Neurontin MDL"). *In re Neurontin Marketing, Sales Practices & Products Liability Litig.,* MDL Docket No. 1629 (D. Mass.).[1]  This fraudulent joinder is a new twist on a previously unsuccessful effort.  Rather than tack on non-diverse sales representatives who allegedly helped to market Neurontin as defendants, *see,*

---

[1] On July 20, 2006, the Removing Defendants notified the Judicial Panel on Multidistrict Litigation ("JPML") that this action was a potential tag-along action that should be transferred to the Neurontin MDL.  On July 21, 2006 the Removing Defendants moved to stay this action pending transfer to the Neurontin MDL.

*e.g.*, *Legg*, 428 F.3d at 1325; *Southern v. Pfizer*, 2:06-CV-836-VEH (N.D. Ala. June 23, 2006) (attached as Exhibit A) – the Plaintiffs here have fraudulently joined a practicing physician from Alabama, Dr. David Longmire.  Dr. Longmire, however, never agreed to assist the Removing Defendants in any scheme to promote Neurontin for off-label uses and never even communicated with Plaintiffs about Neurontin.  Instead, the sole basis of Plaintiffs' claims against Dr. Longmire are entirely truthful statements that he made over ten years ago to other practicing physicians in Boston, Massachusetts and Jupiter Beach, Florida regarding his own experience with Neurontin.  Plaintiffs have no valid cause of action against Dr. Longmire under Alabama law because they have not alleged and cannot show the elements of causation and reliance at all, let alone with specificity, and thus this Court should deny Plaintiffs' Motion.[2]

---

[2] At the time of removal, the Removing Defendants and Dr. Longmire were adverse parties due to the pendency of a lawsuit between them and, accordingly, the Removing Defendants asserted that Dr. Longmire should be realigned for purposed of federal diversity jurisdiction.  The Removing Defendants now believe Dr. Longmire's suit will soon be dismissed.  Nonetheless, and as noted in Plaintiffs' Motion, "[r]e-alignment of the parties is to be accomplished on the basis of the facts available at the commencement of the action."  *Scott v. Francher*, 369 F.2d 842, 844 (5th Cir. 1966).  Given this legal standard for determining jurisdiction, the Removing Defendants maintain their realignment argument, *see infra* at 21-22, but the Court need not reach that argument because Dr. Longmire is fraudulently joined.

## BACKGROUND

This lawsuit involves the Removing Defendants' alleged marketing of Neurontin, a prescription medication that was approved by the Food and Drug Administration as an adjunctive therapy to treat epilepsy in 1994 and to treat a form of neuropathic pain in 2002. In 1996, a Parke-Davis employee brought an action in federal court in Massachusetts alleging that Warner-Lambert had illegally promoted Neurontin to treat various unapproved ("off-label") uses.[3] Thereafter, the federal and state governments commenced investigations into the Removing Defendants' marketing and sales practices related to Neurontin. In 2004, Pfizer (who acquired Warner-Lambert along with its Parke-Davis division in 2000) agreed to settle all claims relating to these actions.

Following this settlement, hundreds of civil plaintiffs – including both individuals and third-party payors ("TPPs") – filed complaints against the Removing Defendants related to the alleged off-label promotion of Neurontin. In October 2004, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated all the consumer-protection cases in which plaintiffs

---

[3] Once the FDA approves a prescription medication to treat a specific condition, doctors are free to prescribe the medication to treat other conditions (so-called "off-label" uses), but a drug manufacturer is limited in the way that it can communicate with doctors regarding off-label uses. *See, e.g.*, 21 U.S.C. § 396; *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001); *Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000); James M. Beck & Elizabeth D. Azari, *FDA, Off-Label Use, and Informed Consent: Debunking Myths and Misconceptions*, 53 Food & Drug L.J. 71, 76-80 (1998).

sought to recover their costs associated with the off-label use of Neurontin in the Neurontin MDL. There are currently over fifty of these cases in the Neurontin MDL, eleven of which (and two from the state of Alabama) involve claims by TPPs.[4] Judge Saris has consolidated the TPPs' complaints into two separate actions: a putative class action and a stand-alone coordinated action. The district court recently dismissed a significant portion of the claims by TPPs in both actions.

Plaintiffs in this case are both TPPs, an insurance provider and a workers compensation fund, and – just like the TPPs in the Neurontin MDL – are seeking to recover the costs associated with their decision to reimburse healthcare providers, pharmacies, or their own insured for off-label prescriptions of Neurontin. Plaintiffs' Complaint is virtually identical to the TPPs' complaints in the Neurontin MDL. It focuses on an alleged scheme by the Removing Defendants to market and promote Neurontin for various off-label uses. Although Plaintiffs' Complaint – again, just like the TPPs' complaints in the Neurontin MDL – mentions the names of several doctors who allegedly made misstatements concerning the off-label use of Neurontin, Plaintiffs here have "cherry picked" from these and included one

---

[4] In April 2005, the JPML expanded the Neurontin MDL to include suits alleging personal injuries associated with the off-label use of Neurontin and renamed it *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*, MDL Docket No. 1629. There are now over 110 personal injury cases also assigned to the Neurontin MDL.

particular doctor – Dr. Longmire, a resident of the State of Alabama – as a defendant in this case in a naked attempt to defeat diversity jurisdiction.[5]

On June 13, 2006, the Removing Defendants timely removed this case to federal court based upon federal diversity jurisdiction.  Removal was appropriate because there is complete diversity of citizenship between Plaintiffs and the only properly joined defendants, and because the amount in controversy satisfies the jurisdictional minimum.  *See* 28 U.S.C. § 1332. Plaintiffs' Motion points to no procedural deficiency in the removal in their Motion and does not challenge the Removing Defendants' assertion that the jurisdictional minimum is satisfied.  Thus, the only issue before this Court is whether Plaintiffs' manipulative pleading can defeat federal jurisdiction.

## ARGUMENT

### I.    The Court Has Diversity Jurisdiction over Plaintiffs' Claims Because Longmire Has Been Fraudulently Joined

Plaintiffs' Motion should be denied because this Court has jurisdiction over Plaintiffs' claims.  Plaintiffs have fraudulently joined Dr. Longmire, the only non-diverse defendant, solely to destroy diversity and prevent this case from being transferred to the Neurontin MDL.  Plaintiffs cannot state a valid

---

[5] Plaintiffs' Complaint asserts five causes of action against Dr. Longmire:  (1) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"); (2) fraud, deceit and suppression; (3) negligent or wanton conduct; (4) negligence or wantonness per se; and (5) conspiracy.  Each of Plaintiffs' claims is premised on the allegedly fraudulent behavior of the Removing Defendants and Dr. Longmire.  (Compl. ¶¶ 171, 183, 191, 198, 203.)

claim against Dr. Longmire, and Plaintiffs' Motion offers nothing to change that fact.

The fraudulent joinder of non-diverse individuals has become a common tactic in pharmaceutical litigation by plaintiffs who – as here – seek to avoid federal court and a multidistrict litigation court. *See Legg*, 428 F.3d at 1320-22 & nn. 1, 3. Nonetheless, it has long been recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a residential defendant." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Plaintiffs may not name parties of the same citizenship solely to avoid removal of an action to federal court. *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). As the Eleventh Circuit recently reaffirmed in *Legg v. Wyeth*, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Legg*, 428 F.3d at 1325 (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

In *Legg*, the Eleventh Circuit held that a non-diverse defendant is fraudulently joined where there is "no reasonable possibility" that a state might impose liability on the non-diverse defendant. *Id.* at 1324. This "potential for legal liability" cannot be "merely theoretical" but instead must

be based on facts in evidence. *Id.* at 1325 n.5; *see id.* at 1322-24. A court's assessment of a defendant's fraudulent joinder is like a motion for summary judgment; the court can consider affidavits submitted by defendants but is limited to "the plaintiff's pleadings at the time of removal" and not subsequent assertions or arguments offered by the plaintiff in support of a motion to remand. *Id.* at 1322-23 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).

Plaintiffs here have "no reasonable possibility" of stating a valid cause of action against Dr. Longmire because Plaintiffs have not alleged and cannot show any causal connection between Dr. Longmire's alleged misrepresentations regarding Neurontin to a collection of physicians in Massachusetts and Florida over ten years ago and Plaintiffs' decision to provide coverage for their insureds' prescriptions of Neurontin. Ultimately, Plaintiffs' claims here against Dr. Longmire are just like the fraudulently joined claims against the non-diverse sales representatives in *Legg* that the Eleventh Circuit found did not have any reasonable possibility of prevailing and should not defeat federal jurisdiction. For these reasons, Plaintiffs' motion should be denied.

### A.    Plaintiffs Have No Reasonable Possibility of Prevailing Against Dr. Longmire Because They Have Not Alleged and Cannot Demonstrate a Causal Link Between His Purported Misrepresentations and Their Alleged Injury

There is no reasonable possibility that Plaintiffs will prevail on their claims against Dr. Longmire because Plaintiffs have not adequately pleaded and cannot show the required elements of causation and reliance.  Causation is an essential element of each of Plaintiffs' claims.[6]  "The proximate cause of an injury is that cause which in the natural and probable sequence of events, and without intervention of any new or independent cause, produces the injury and *without which* such injury would not have occurred."   2 *Alabama Pattern Jury Instructions* § 33.00 (2d ed. 1993) (emphasis added); *see also Boackle v. Bedwell Constr. Co.*, 770 So. 2d 1076, 1081 (Ala. 2000) (citing Alabama Pattern Jury Instruction § 33.00 in a fraud case).  In the context of a fraud-based claim, a plaintiff must establish that he or she "'reasonably relied[7] on the alleged misrepresentation.' . . . Thus, reliance in

---

[6] *See* Ala. Code § 8-19-10(a) (2002) (ADTPA); *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) (negligence per se); *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 134 (Ala. 2003) (negligence); *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs. Inc.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression); *AmSouth Bank, N.A. v. Spigener*, 505 So. 2d 1030, 1040 (Ala. 1986) (conspiracy).

[7] In fraud cases, "causation is often discussed in terms of reliance."  *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 466 (Ala. 2000); *see also* 1 Michael L. Roberts & Gregory S. Cusimano, *Alabama Tort Law* § 20.12 at 20-85 (4th ed. 2004) ("Closely related to the concept of reliance is the principle that a fraudulent representation on which a plaintiff relies is nevertheless not actionable unless some detriment, injury, or damage

the form that the misrepresentation is 'acted on by the opposite party' is an essential element of fraud in Alabama." *Hunt Petroleum Corp. v. Alabama*, 901 So. 2d 1, 4 (Ala. 2004) (quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003), and *Liberty Nat'l Life Ins. Co. v. Allen*, 699 So. 2d 138, 141 (Ala. 1997)).  To determine whether causation and reliance exist for purposes of establishing a fraud-based claim under Alabama law, a court must consider:

> whether or not a misrepresentation was actually relied upon, whether it was a cause in fact of the damage . . . .  If the plaintiff would not have acted on the transaction in question *but for* the misrepresentation, such misrepresentation was an actual cause of his loss.  *If he would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it can not be said that the misrepresentation caused any damage, and the defendant will not be liable therefore.*

*Hunt Petroleum Corp.*, 901 So. 2d at 4 (quoting *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortgage Co.*, 390 So. 2d 601, 611 (Ala. 1980)) (emphasis added).

Plaintiffs' seventy-page complaint neither alleges that Dr. Longmire made any false representations directly to Plaintiffs, nor alleges that Dr. Longmire's representations, which were made to non-party physicians in Florida and Massachusetts over ten years ago, reached Plaintiffs by some

---

thereby accrues to the plaintiff.").  For that reason, reliance and causation will be discussed concurrently in this section.

other means.[8]   Instead, Plaintiffs' fraud claims against Dr. Longmire are
based entirely on statements allegedly made to physicians who are not
parties to this lawsuit.   Because Plaintiffs do not and cannot establish a
causal link between Dr. Longmire's alleged misrepresentations and their
own payment determinations, there is no reasonable possibility that
Plaintiffs will prevail on their claims against Dr. Longmire.   Accordingly,
Plaintiffs' Motion should be denied.

Moreover, absent special circumstances not relevant here, "[i]t is
fundamental that the representee who relied on the defendant's misstatement
and the plaintiff who was injured must be one and the same."   *Ames v.
Pardue,* 389 So. 2d 927, 931 (Ala. 1980); *see also Montgomery Rubber &
Gasket Co. v. Belmont Machinery Co.*, 308 F. Supp. 2d 1293, 1298-1300
(M.D. Ala. 2004) (rejecting the plaintiff's misrepresentation and deceit
claims where the plaintiff failed to allege that the defendant made any
representation to the plaintiff whatsoever).   Even in the cases where third-
parties have been allowed to bring fraud claims, courts have found that the
defendant must have intended to induce the third-party to rely on the

---

[8] From their Complaint, it is clear that Plaintiffs, both of whom are headquartered in and
organized under the laws of the State of Alabama, do most, if not all, of their business in
Alabama.   Although Dr. Longmire is an Alabama citizen, Plaintiffs do not allege any
misconduct that he committed there.   Rather they complain of his conduct at two
conferences – which they do not allege to have attended – that occurred in (1) Boston,
Massachusetts; and (2) Jupiter Beach, Florida over a decade ago.   (*See* Compl. ¶ 75, 133-
34.)

deception. *See, e.g.*, *Thomas v. Halstead*, 605 So. 2d 1181, 1184-85 (Ala. 1992) (holding that, where the "'defendant caused the representations to be made, and the public were *intended to be thereby induced to act upon them, and plaintiff was within the class of those so contemplated*, the action for deceit against defendant may be maintained by plaintiff,'" even though the defendant did not make the representation directly to the plaintiff) (quoting *Sims v. Tigrett*, 158 So. 326, 330 (Ala. 1934)) (emphasis added). It is undisputed that Dr. Longmire, lecturing to *physicians* in Florida and Massachusetts over ten years ago regarding his experience treating patients with Neurontin, never contemplated nor intended that Alabama *insurers* would be induced to make *insurance coverage* decisions based on statements in those lectures. (*See* Decl. of David Longmire ¶ 19, attached hereto as Ex. B (hereinafter "Longmire Decl.").) This disconnect provides yet another reason why Plaintiffs' fraud claims fail. *See Ames,* 389 So. 2d at 931-32 (rejecting the plaintiff's fraud claim where the defendant's misrepresentation was not directed – in the sense that the defendant intended the plaintiff to act upon it – towards the plaintiff); *see also Chase v. Kawasaki Motors Corp.*, 140 F. Supp. 2d 1280, 1293 (M.D. Ala. 2001) (noting that "the entire basis for third party standing in misrepresentation cases is that the *deceiver contemplated that the third party would be induced*

*to act* by the deceiver's misstatements made to someone else" (emphasis added)).

Finally, and perhaps most importantly, Plaintiffs do not even allege and cannot show that they relied on Dr. Longmire's alleged misrepresentations. Regardless of the truth of the factual allegations or the cause and extent of their supposed injuries, Plaintiffs have no cause of action under Alabama law based on alleged fraudulent statements made to, and *relied upon*, by other parties because Alabama law has "never gone so far as to say that the injured party does not have to prove reliance on his or her part on the alleged misrepresentation." *Chase*, 140 F. Supp. 2d at 1293. Despite Plaintiffs' citation to several cases to support their fraud-based claims, no Alabama court has ever permitted a fraud claim in the absence of reliance by the plaintiff. *See, e.g.*, *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (finding as a matter of law that the plaintiff could not maintain his fraud claim because there was no evidence the plaintiff "relied to his detriment on any of the alleged misrepresentations" and stating that neither *Thomas v. Halstead*, 605 So. 2d 1181 (Ala. 1992), nor any other authority "excus[es] a plaintiff from the requirement of establishing *his* reliance on [the defendant's] misrepresentation") (emphasis added); *see also* 37 Am. Jur. 2d Fraud & Deceit § 290 (May 2004) ("The party seeking

damages for misrepresentation must have personally been misled and must have personally relied on the untrue statement."). Moreover, Plaintiffs have utterly failed to plead reliance with the specificity required by Rule 9(b) of the Federal and Alabama Rules of Civil Procedure. *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD) (Mar. 26, 2004) (applying Alabama law and concluding that defendants were fraudulently joined because plaintiffs had failed to plead their fraud claims with particularity) (attached as Exhibit C); *see also Evans v. Pearson Enters.*, 434 F. 3d 839, 853-54 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud.").

Although Plaintiffs allege that a far-reaching fraudulent marketing scheme on the part of the *Removing Defendants* caused them to provide insurance coverage that they would not otherwise have provided, nowhere do Plaintiffs allege that they ever received *Dr. Longmire's* purported misrepresentations, much less that *his* specific misrepresentations influenced their prescription drug payment/reimbursement determinations. Plaintiffs'

Complaint instead consists of generalized allegations that Plaintiffs relied on and were damaged by Dr. Longmire's alleged misrepresentations that do not even remotely satisfy the particularity requirements of Rule 9(b).  (*See, e.g.*, Compl. ¶¶ 183, 188.)  Plaintiffs do not allege and cannot show that they or their agents personally attended the conferences at which Dr. Longmire spoke or that Dr. Longmire's specific representations were conveyed to them in any other way at any other time, that they relied on those representations in reaching their decisions to pay or reimburse their insured for off-label prescriptions of Neurontin, or that their payment decisions would have been different had they not received and relied upon them.  Accordingly, Plaintiffs have no reasonable possibility of prevailing against Dr. Longmire on any of their claims.

### B.    *Legg v. Wyeth* **Is Directly Analogous to the Facts Here**

The Eleventh Circuit's decision in *Legg v. Wyeth* demonstrates that Dr. Longmire has been fraudulently joined here.  428 F.3d at 1319.  In *Legg*, plaintiffs Carl and Dorothy Legg asserted numerous personal-injury claims against Wyeth, a diverse pharmaceutical manufacturer, and joined identical claims against three non-diverse sales representatives in an effort to "defeat Wyeth's right to remove [the] case to federal court" and to avoid an ongoing multidistrict litigation involving claims related to the prescription drug

Redux. *Id.* Among other things, the Leggs asserted claims for fraud based on allegations that the defendants – including the sales representatives – made misrepresentations and suppressed certain facts related to Redux. *See id.* at 1324. Wyeth removed the case on diversity grounds and argued that the Leggs had fraudulently joined the sales representatives. In support of federal jurisdiction, Wyeth included affidavits from the sales representatives that contradicted the allegations in the plaintiffs' complaint. *Id.* at 1319-21. Among other things, the affidavits showed that the only sales representative who had actually promoted Redux did not do so to Leggs' prescribing physician and had no knowledge of any risks associated with its use. *See id.* at 1321-25 & n.4.

Although the district court remanded the case to state court, the Eleventh Circuit in *Legg* – after going out of its way to note the ongoing Redux multidistrict litigation – concluded that the remand had been improvidently granted. *Id.* at 1320-21 & nn. 1, 3. Based on Wyeth's supporting affidavits, the court found that there was "no reasonable possibility" that plaintiffs could establish claims against the non-diverse sales representatives under Alabama law. *Id.* at 1324-25 & n.5. In doing so, the court explained that it was appropriate to consider the evidence submitted by the defendants and that, in such circumstances, "the court

cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* at 1323. Overall, the court reaffirmed that "the removal process was created by Congress to protect defendants" and that district courts should be "vigilant to protect the right to proceed in the Federal court" and to stop plaintiffs from using "a bag of tricks" or other "devices" "to prevent removal." *Id.* at 1325 (internal quotations and citations omitted).

In *Legg*, the Eleventh Circuit concluded that the sales representatives were fraudulently joined because the sales representatives' affidavits showed that Plaintiffs could not establish an essential element of that claim. *Id.* at 1324. In so holding, the Eleventh Circuit's decision confirmed long-standing Alabama fraud law that there can be no reasonable basis to predict that an Alabama court will find a sales representative liable for his or her employer's wrongful acts absent evidence that the sales representative knew or should have known about the employer's misconduct. *See id.* at 1324-25; *accord Reynolds Metals Co.*, 825 So. 2d at 104-05 (discussing elements of fraud claims under Alabama law). Other courts applying Alabama law have similarly held that *simply alleging* fraud against a sales representative will not defeat diversity jurisdiction and that a sales representative will be deemed to have been fraudulently joined where the allegations do not satisfy

an "essential element[] of fraud." *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 n.29 (S.D.N.Y. 2001). Ultimately, plaintiffs cannot merely "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants'" in order to defeat federal jurisdiction. *Id.* at 283.

In a novel twist on the typical allegations directed against sales representatives that the Eleventh Circuit rejected in *Legg*, Plaintiffs here presume that bald assertions against a practicing physician – namely, that Dr. Longmire's "acts and/or omissions were the proximate cause of [their] damages" and that they "reasonably relied upon [Pfizer's and Longmire's] numerous misrepresentations and omissions of material fact" – somehow establish the elements of their fraud-based claims. (Plaintiffs' Motion at 11, 19.) In his declaration, however, Dr. Longmire unequivocally states that on the few occasions when he spoke publicly to other physicians about Neurontin in 1996, 1997, and 1998, he merely relayed his own, entirely truthful observations, and he never misrepresented any fact regarding Neurontin and never assisted with any alleged off-label promotion by the Removing Defendants. (Longmire Decl. ¶¶ 8-9, 20.) Moreover, Dr. Longmire clearly states that he has never spoken with or made any

representations to Plaintiffs regarding Neurontin and that neither Plaintiffs nor any of their agents attended any presentation or speech that he gave regarding Neurontin. *Id.* ¶¶ 10-18. Finally, Dr. Longmire declares that any statements regarding Neurontin that he did make at any presentation or speech were "intended for the audience to which [he] was speaking" and that he "never intended for any statement that [he] made at such speaking engagements or at any other time to influence the coverage decisions of any third-party payors for prescription medications." *Id.* ¶ 20.

Plaintiffs have not alleged any facts, and cannot offer any evidence, to dispute Dr. Longmire's testimony. Nowhere do the Alabama-based Plaintiffs explain how, when, or where Dr. Longmire's alleged misrepresentations, which were made to an unspecified group of physicians at conferences in Florida and Massachusetts in 1996 and 1997, reached the Plaintiffs and influenced their decision to pay or reimburse their insured for Neurontin. Instead, Plaintiffs rely on general allegations of "corporate wrongdoing, which they ascribe to [Dr. Longmire] through the use of the catch-all attribution to 'defendants.'" *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 283; (Compl. ¶¶ 183, 188 (failing to distinguish between their reliance on the alleged misrepresentations of the Removing Defendants and their reliance on the alleged misrepresentations of Longmire); ¶¶ 173, 189,

194, 201, 204 (failing to allege that they changed their prescription coverage decision on the basis of misrepresentations by Dr. Longmire as opposed to misrepresentations by the Removing Defendants).)  In doing so, Plaintiffs fail to dispute Dr. Longmire's declaration and, thus, his declaration must be taken as true.  *See Legg*, 428 F.3d at 1323.  Without competent evidence (or even an allegation) that Dr. Longmire ever made false representations to Plaintiffs, or that those false representations that he allegedly made to unspecified physicians in Florida and Massachusetts over ten years ago were somehow relayed to Plaintiffs, Plaintiffs cannot establish that they changed their coverage decision for Neurontin prescriptions on the basis of Dr. Longmire's alleged misrepresentations.  For the same reasons that the Eleventh Circuit in *Legg* rejected the fraudulent joinder of a full-time employee whose job it was to meet with physicians in Alabama on a regular basis and promote the use of medication, this court should do the same for Dr. Longmire, who Plaintiffs contend merely spoke about Neurontin over a decade ago at two events outside of the state.  Accordingly, there is "no reasonable possibility" that an Alabama court would hold Dr. Longmire liable for any fraud-based cause of action.  *Legg*, 428 F.3d at 1325.

**II.    The Court Has Diversity Jurisdiction over Plaintiffs' Claims Because Defendant Longmire Has Been Improperly Aligned**

Even if Dr. Longmire had not been fraudulently joined as a defendant, this Court has jurisdiction over this action because Dr. Longmire was inappropriately aligned as a defendant when the Complaint was filed and at the time of removal.[9]    As Plaintiffs have already recognized in their Motion, "[r]e-alignment of the parties is to be accomplished on the basis of the facts available at the commencement of the action."  *Scott v. Francher*, 369 F.2d 842, 844 (5th Cir. 1966); *see supra* n. 2.

This Court is not bound by the manner in which a complaint characterizes the parties; rather, this Court is duty-bound to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941).  The determination of whether the parties ought to be realigned "must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute."  *Id.*  While secondary disputes between a named plaintiff and a named defendant may exist, alignment for jurisdictional purposes must be based upon the primary dispute in the lawsuit.  *See Indem. Ins. Co. of N. Am. v. First Nat'l Bank at Winter Park,*

---

[9] As set forth in footnote 2 *supra*, the Removing Defendants expect that Dr. Longmire's suit will soon be dismissed.

*Fla.*, 351 F.2d 519, 522 (5th Cir. 1965) (applying primary purpose test); *see also Boland v. State Auto. Mutual Ins. Co.*, 144 F. Supp. 2d 1282, 1285 (M.D. Ala. 2001) (same).

On May 12, 2006, Plaintiffs filed the Complaint in this lawsuit, alleging that they were damaged "as a result of Defendants' wrongful scheme to market and sell the drug Neurontin." (Compl. ¶ 1). On the very same day, Dr. Longmire filed his own complaint against the Removing Defendants wherein he alleged that he was damaged as the result of the Removing Defendants' "scheme to illegally and fraudulently market an epilepsy drug [Neurontin]." (Notice of Removal ¶ 1). A cursory review of the pleadings clearly demonstrates that the "primary and controlling matter" in both suits is whether the Removing Defendants engaged in a wrongful scheme to market and sell Neurontin. (Notice of Removal ¶ 17.)

Plaintiffs' mislabeling of an individual physician as a "defendant" in this case should not be allowed to defeat the true Defendants' right to remove this action to federal court. *See Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.*, 105 F. Supp. 2d 1336, 1341 (N.D. Ga. 2000), *aff'd,*

2002 WL 3179469 (11th Cir. 2002).  For this reason, Dr. Longmire should be realigned as a party plaintiff for jurisdictional purposes.[10]

## **CONCLUSION**

For these reasons, as well as those stated in the Notice of Removal, the Removing Defendants respectfully request that the Court deny Plaintiffs' Motion.

DATED this 24th day of July 2006.

Respectfully submitted,

_/s/ Brian A. Wahl_
Brian A. Wahl (WAH003)
One of the Attorneys for Pfizer Inc.

**OF COUNSEL:**

Fred M. Haston III (HAS012)
Andrew B. Johnson (JOH168)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

---

[10] Plaintiffs' suggestion that a co-defendant cannot be realigned where a fraud or conspiracy claim has been alleged against him is directly rebutted by case law. _See, e.g._, _U.S. Fidelity Guaranty Co. v. Algernon-Blair, Inc._, 705 F. Supp. 1507, 1508, 1513 (M.D. Ala. 1988) (realigning named defendant as a party plaintiff where fraud had been alleged against it in complaint); _see also Jordan v. Marks_, 147 F.2d 800, 802-03 (5th Cir. 1945) (realigning named plaintiffs).  Moreover, federal courts frequently realign the parties in spite of the presence of cross- or counterclaims.  _See, e.g._, _Indemnity Ins. Co. of N. Am. v. First Nat'l Bank at Winter Park, Fla._, 351 F.2d  519, 522-23 (5th Cir. 1965); _U.S. Fidelity Guaranty Co. v. Algernon-Blair, Inc._, 705 F. Supp. 1507, 1508, 1513 (M.D. Ala. 1988).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**COUNSEL FOR BLUE CROSS AND BLUE SHIELD OF ALABAMA**
Kimberly Redman West
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
P.O. Box 530910
Birmingham, Alabama  35253-0910

Pamela Beard Slate
SLATE KENNEDY LLC
166 Commerce Street, Suite 350
Montgomery, Alabama  36104-2560

**COUNSEL FOR MUNICIPAL WORKERS COMPENSATION FUND, INC.**
Josh J. Wright
HOLLIS & WRIGHT, P.C.
505 North 20th Street
Suite 1750
Birmingham, Alabama   35203

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**DAVID REYNOLDS LONGMIRE, M.D.**
13150 Highway 43
Russellville, Alabama  35653

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to his/her regular mailing address, on this 24th day of July, 2006.

/s/ Brian A. Wahl
OF COUNSEL