IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF ALABAMA; MUNICIPAL WORKERS COMPENSATION FUND, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> PFIZER, INC., WARNER-LAMBERT COMPANY LLC; WARNER-LAMBERT COMPANY; PARKE-DAVIS, A DIVISION OF WARNER-LAMBERT COMPANY AND WARNER-LAMBERT COMPANY LLC; DAVID LONGMIRE, et al., <br><br>  Defendants. | CIVIL ACTION NO. <br> 2:06-CV-00524-MEF-VPM |

**MOTION TO DISMISS FILED BY**
**DEFENDANT DAVID R. LONGMIRE**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the statutes and case law discussed herein, defendant David R. Longmire ("Dr. Longmire") moves for a dismissal of all claims stated against him in the Complaint. As grounds for this Motion to Dismiss, Dr. Longmire relies on the legal arguments concerning fraudulent joinder as set forth in the Notice of Removal (Doc. 2) and Defendants' Opposition to Plaintiffs' Motion to Remand (Doc. 11) filed on behalf of defendants Pfizer, Inc., Warner-Lambert Company, Warner-Lambert LLC and Parke-Davis, a division of Warner-Lambert Company LLC and Warner-Lambert Company (the "Corporate Defendants"). In addition, Dr. Longmire asserts as follows:

**I.   INTRODUCTION**

Plaintiffs have sued the world's largest pharmaceutical company and joined a small-town Alabama doctor, Dr. Longmire, even though the wrongful conduct Dr. Longmire allegedly

1

engaged in occurred more than 10 years ago. While Dr. Longmire's joinder for alleged conduct that occurred 10 years ago certainly raises a strong presumption of fraudulent joinder, even if the Plaintiffs actually intend to pursue a judgment against Dr. Longmire—which they do not—the statutes of limitations applicable to each of the Plaintiffs' claims bar them from proceeding. Moreover, the Plaintiffs have failed to state claims against Dr. Longmire on several substantive grounds. Dr. Longmire therefore respectfully requests that the Court dismiss him from this action because the Plaintiffs have failed to state a claim against him.

## II.     STATEMENT OF FACTS

This lawsuit involves the alleged off-label marketing of the prescription drug Neurontin, and arises out of the same factual circumstances as more than 50 other cases currently pending in multidistrict litigation in Massachusetts (the "Neurontin Litigation"). A complete statement of the underlying facts regarding the Neurontin Litigation is contained in the Corporate Defendants' Opposition to Plaintiffs' Motion to Remand (Doc. 11).

The two plaintiffs in this action are "third-party payors" who have filed suit against the Corporate Defendants and Dr. Longmire to recover the amounts each allegedly paid for off-label prescriptions of Neurontin. The allegations in the Complaint parrot the allegations in the Neurontin Litigation almost verbatim, including mentioning several doctors who allegedly made misrepresentations regarding the efficacy of Neurontin for off-label uses. From this cadre of doctors referenced in the Neurontin Litigation, the Plaintiffs have targeted Dr. Longmire, a resident of the State of Alabama and a neurologist specializing in neuropathic pain and pain management.

The Complaint alleges that in 1996, Dr. Longmire gave two presentations to physicians at continuing medical education seminars, one in Jupiter Beach, Florida, and the other in Boston,

Massachusetts, regarding his experience with Neurontin to treat neuropathic pain. In the 204 paragraphs of the Complaint, the only misrepresentations the Plaintiffs allege Dr. Longmire made occurred 10 years ago at the seminars in Florida and Massachusetts. They are as follows:

- "'most [patients] do better as you raise [the dose] higher.'" *Complaint* ("*Compl.*") at ¶ 133.

- "the only reason a patient who was actually taking his medication and not malingering would not receive any benefit from Neurontin was if he was not receiving a high enough dose." *Id.*

- "'the problem with Neurontin in terms of real trigeminal neuralgia is that it has to be titrated upward. And when I say 1500 milligrams, that's the target starting dose. There are colleagues in the Huntsville area who, I have people on 5400 with no side effects.'" *Id.* at ¶ 134.

Based on those alleged misrepresentations to several dozen physicians who attended the presentations, the Plaintiffs have asserted five claims against Dr. Longmire: (1) Violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et. seq.*; (2) Fraud, Deceit and Suppression; (3) Negligent or Wanton Conduct; (4) Negligence or Wantonness Per Se; and (5) Civil Conspiracy. *See Compl*. at ¶¶ 170-176, 182-204.

## II.   ARGUMENT

### A.   The Statutes of Limitations Applicable to Each of Plaintiffs' Claims Against Dr. Longmire Bar Plaintiffs from Proceeding.

Because the conduct Dr. Longmire allegedly engaged in occurred at least 10 years ago, the statute of limitations bars each of the Plaintiffs' claims against him.

#### i.   *The Alabama Deceptive Trade Practices Act (Count One)*

The Alabama Deceptive Trade Practices Act ("ADTPA") has a statute of limitations of one year upon discovery of the allegedly wrongful conduct, "but in no event may any action be brought under [the ADTPA] more than four years from the date of the transaction giving rise to

the cause of action." Ala. Code. § 8-19-14. Here, all of the conduct attributed to Dr. Longmire in the Complaint occurred in 1996. *See Compl.* at ¶¶ 75, 133, 134 (describing alleged misrepresentations Dr. Longmire made at consultants' meetings in 1996). Plaintiffs explicitly identify the time of Dr. Longmire's alleged misrepresentations as 1996 in their Motion to Remand to State Court and Memorandum in Support Thereof ("*Motion to Remand*") (Doc. 4). *Motion to Remand* at 12 (alleging that Dr. Longmire made misrepresentations at consultants meetings in Jupiter Beach, Florida, in April of 1996, and at the Boston Ritz in May of 1996). It is now more than 10 years later. Plaintiffs' claims under the ADTPA in Count One are therefore barred.

        ii.     *Negligence and Wantonness, and Negligence Per Se and Wantonness Per Se (Counts Four and Five)*

Under Alabama law, actions for negligence and wanton conduct must be brought within two years of the alleged wrong regardless of when the wrong is discovered. Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997) ("…a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury."); *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993) ("There is…no 'discovery rule' to toll the running of the limitations period with respect to negligence or wantonness actions; the 'discovery rule' in Alabama is applicable only to fraud actions."). The Plaintiffs have alleged no conduct by Dr. Longmire that occurred within

4

two years of filing the Complaint. The statute of limitations therefore bars the Plaintiffs' Negligence and Wantonness claims, contained in Counts Four and Five, against Dr. Longmire.[1]

        iii.      *Fraud, Deceit and Suppression (Count Three)*

The limitations period applicable to fraud actions in Alabama is two years. Ala. Code § 6-2-3. This period begins to run when the "plaintiff discovers or should have discovered the fraud." *Id.* When a fraud action is filed more than two years after the alleged fraud occurred, the plaintiff must allege facts showing what prevented discovery of the fraud. *Smith v. National Ins. Security Co.*, 860 So. 2d 343, 347 (Ala. 2003). If the complaint contains insufficient allegations to satisfy the discovery rule, the complaint should be dismissed. *Id.*

Here, the facts alleged in the Plaintiffs' own Complaint indicate that they should have discovered the alleged fraud more than two years prior to filing their Complaint. In Paragraphs 97 and 107, the Plaintiffs allege that in 2000 Parke-Davis published negative results of clinical trials of Neurontin for bi-polar disorder and panic disorder. Such publications put the Plaintiffs on inquiry notice that Neurontin may not be effective for certain off-label uses. In addition, in Paragraph 167 of the Complaint, the Plaintiffs identify a July 1, 2002 letter from Dr. Lisa Stockbridge of the Department of Health & Human Services to Pfizer stating that Pfizer "makes representations about Neurontin that are false and misleading." The Stockbridge letter gave the Plaintiffs notice of their potential claims in this case, claims which they failed to prosecute in a timely manner.

Furthermore, the Plaintiffs have not alleged specific facts showing what prevented them from discovering the alleged fraud, as required by *Smith*. The Plaintiffs allege in paragraph 12

---

[1] The Plaintiffs' Negligence and Wantonness Per Se claims are specious at best, and only underscore who the real target of their claims is. The Food, Drug and Cosmetic Act, 21 U.S.C. § 331 *et. seq.*, upon which the Plaintiffs base their Negligence and Wantonness Per Se claims, contains no prohibitions that would apply to the conduct alleged against Dr. Longmire in the Plaintiffs' Complaint.

5

that they did not discover or have inquiry notice of the alleged fraud by Dr. Longmire until less than a year before the Complaint was filed, but they have conspicuously failed to explain *why*. The Plaintiffs do not allege any facts or circumstances by which the defendants concealed the cause of action or the Plaintiffs' alleged injuries, nor do they allege what prevented them from discovering facts surrounding their injuries. *See Smith*, 860 So.2d at 346-47. Because the Plaintiffs should have discovered the alleged misrepresentations more than two years before filing the Complaint and have utterly failed to articulate any reason why the savings clause should apply, the statute of limitations bars their fraud claims against Dr. Longmire.

>       **B.      The Plaintiffs Have No Standing Under the Alabama Deceptive Trade Practices Act.**

Even if Count One of the Complaint under the ADTPA were not barred by the statute of limitations, the Plaintiffs nonetheless lack standing to proceed under the ADTPA because it only grants standing to "consumers" for the alleged wrongs involved in this case. Section 8-19-10 of the ADTPA grants a private right of action to consumers who suffer monetary damages as a result of an act declared unlawful by the ADTPA. *See* Ala. Code § 8-19-5. The ADTPA defines consumers as "[a]ny natural person who buys goods or services for personal, family or household use." Ala. Code § 8-19-3. The Plaintiffs in this case are not natural persons, but corporations. *See Compl.* at ¶ 13. Thus, they have no standing to proceed under the ADTPA. *See e.g. Meeks v. Xtreme Cycle Supply*, 2006 WL 780580, at *2 (M.D. Ala. March 27, 2006); *EBSCO Indus. v. LMN Enters.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000); *Deerman v. Fed. Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).

### C. The Plaintiffs Have Alleged No Facts Showing They Relied on Dr. Longmire's Alleged Misrepresentations.

Count Three of the Plaintiffs' Complaint for fraud, deceit and suppression requires a showing that the Plaintiffs relied on Dr. Longmire's alleged misrepresentations. In general, a stranger to an alleged misrepresentation has no right of action for fraud. *Thomas v. Halstead*, 605 So. 2d 1181, 1184 (Ala. 1992) (citation omitted). In limited circumstances, "a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff." *Delta Health Group, Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) ("*Delta Health*"). However, such a plaintiff is not excused from the requirement of establishing his detrimental reliance on the misrepresentation. *Id.*; *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1293 (M.D. Ala. 2001).

*Delta Health* is a case in point. In that case, the plaintiff claimed that a third party relied on a statement by the defendant and that such reliance proximately caused the third party to sue the plaintiff, thereby causing him damage. 887 So. 2d at 898. The Supreme Court of Alabama held that the plaintiff failed to show that he "relied to his detriment on any of the alleged misrepresentations made by [the Defendant] to [the third party]." *Id.* at 899. The plaintiff's fraud claim therefore failed. *Id.*; *see also Chase*, 140 F. Supp. 2d at 1293 (plaintiffs failed to show they relied on alleged misrepresentation made to third party, where plaintiffs did not hear the misrepresentation and were not induced to act any differently because of the alleged misrepresentation).

Here, the Plaintiffs freely admit in their Complaint and Motion to Remand that Dr. Longmire directed his allegedly false statements to third parties who are not parties to this suit. *See Compl.* at ¶¶ 133, 134, 149 (alleging Dr. Longmire made representations to physician attendees of consultants' meetings); *Motion to Remand* at 12 (same). Nowhere in the Complaint

7

do the Plaintiffs claim they knew of Dr. Longmire's statements or heard them and thereupon acted in reliance upon them. Like the third party in *Delta Health*, if anyone relied on Dr. Longmire's statements it was the physician attendees of the consultants' meetings (i.e. the third parties). Also like in *Delta Health*, if the attendees of the consultants' meetings were induced to act based upon Dr. Longmire's statements, and their actions injured the Plaintiffs, the Plaintiffs must still show that *they* relied on Dr. Longmire's statements and that such reliance induced *them* to act to their detriment. The Plaintiffs have not even come close to alleging they actually relied on Dr. Longmire's alleged misrepresentations. Without satisfying the reliance element, the Plaintiffs' fraud claim must fail.

      **D.**    **The Plaintiffs Have Failed to Allege Any Facts Showing that Dr. Longmire's Alleged Conduct Caused Them Harm.**

Of the Plaintiffs' five claims against Dr. Longmire, Count Three (Fraud), and Counts Four and Five (Negligence and Wantonness, and Negligence Per Se and Wantonness Per Se) require the Plaintiffs to properly allege causation. The allegations in the Complaint fall woefully short of meeting this element.

Proximate cause is "an essential element of both negligence and wantonness claims." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).[2] The Plaintiffs must aver facts indicating that Dr. Longmire's alleged conduct resulted in a "natural and continuous sequence…that produce[d] an injury or harm and without which the injury or harm would not occur." *Jamison, Money, Farmer & Co., P.C. v. Standeffer*, 678 So. 2d 1061, 1066 (Ala. 1996) (citations omitted). Similarly, to sustain a claim for fraud, the Plaintiffs must allege that they relied on Dr. Longmire's alleged misrepresentations and that *because* of their reliance they have suffered

---

[2] A claim for negligence or wantonness per se still requires a plaintiff to properly allege causation. *Dickinson v. Land Developers Const. Co., Inc.*, 882 So.2d 291, 302 (Ala. 2003) (negligence per se).

8

damages. *Ex parte ERA Marie McConnell Realty, Inc.*, 774 So. 2d 588, 591 (Ala. 2000). The Complaint contains no facts alleging that Dr. Longmire's alleged conduct is the proximate cause of the Plaintiffs' alleged damages.

The Plaintiffs state the crux of their claims in Paragraph 5 of the Complaint: "Defendants promoted the off-label use of Neurontin so that Plaintiffs would be defrauded or otherwise unlawfully influenced into treating prescriptions of Neurontin as medically necessary and effective, and therefore defrauded or otherwise unlawfully influenced into paying for Neurontin for off-label uses." However, in stating their allegations against Dr. Longmire, the Plaintiffs have failed to allege facts indicating how his alleged conduct resulted in the harm described in Paragraph 5. The Plaintiffs allege that Dr. Longmire, while speaking to physicians at two so-called "consultants' meetings" in 1996, made the following three representations to those attending:

> ● "'most [patients] do better as you raise [the dose] higher.'" *Compl.* at ¶ 133.
>
> ● "the only reason a patient who was actually taking his medication and not malingering would not receive any benefit from Neurontin was if he was not receiving a high enough dose." *Id.*
>
> ● "'the problem with Neurontin in terms of real trigeminal neuralgia is that it has to be titrated upward. And when I say 1500 milligrams, that's the target starting dose. There are colleagues in the Huntsville area who, I have people on 5400 with no side effects." *Id.* at ¶ 134.

From those three alleged misrepresentations made to third parties who are not involved in this suit, the Plaintiffs leap to the conclusion that Dr. Longmire unlawfully influenced the Plaintiffs to pay for Neurontin for off-label uses. The Complaint, however, alleges no facts that link Dr. Longmire's alleged misrepresentations to the alleged harm. There are no allegations that any of the doctors to whom Dr. Longmire spoke at the consultants' meetings subsequently

9

prescribed Neurontin for off-label uses to patients enrolled in any of the Plaintiffs' insurance policies. Even if the Plaintiffs made such an allegation, they still would have to identify specific patients and prescriptions and allege facts tending to show that it was Dr. Longmire's alleged misrepresentations that influenced the doctors' decisions to write such prescriptions, and not those doctors' own evaluations of the efficacy of Neurontin for certain uses. As it is, a yawning gap remains in the Plaintiffs' Complaint, as there is no bridge connecting Dr. Longmire's alleged conduct to the harm the Plaintiffs have allegedly suffered.

### E. The Plaintiffs Allege No Facts Indicating that Dr. Longmire Owed Them Any Duty.

Under Count Three of the Complaint, in order to maintain their claim for fraud against Dr. Longmire, the Plaintiffs must allege that he was under a duty to disclose information because of the existence of a confidential relationship or special circumstances between him and the Plaintiffs. *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 847-48 (Ala. 1993); *DeWitt v. Long*, 519 So. 2d 1363, 1366 (Ala. 1987).

The Complaint contains no allegations that Dr. Longmire owed the Plaintiffs a duty because of a confidential relationship existing between them. When the parties are dealing at arm's length, no such duty arises. *See Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621, 623 (Ala. 1986). Here, the Plaintiffs and Dr. Longmire were not dealing with each other in any capacity. The Complaint contains no allegations that the Plaintiffs attended the meetings at which Dr. Longmire made the alleged misrepresentations or that they ever heard the misrepresentations. Without any allegations that Dr. Longmire and the Plaintiffs were even dealing with each other, the requisite confidential relationship is absent, and the Plaintiffs' claim for fraudulent suppression must fail.

### III. CONCLUSION

For the reasons stated above, Dr. Longmire respectfully requests that the Court dismiss him from this action, with prejudice.³

      /s/ Charles K. Hamilton
Bruce F. Rogers
Charles K. Hamilton

Attorneys for David R. Longmire

OF COUNSEL:

Bainbridge, Mims, Rogers & Smith, LLP
The Luckie Building, Suite 415
600 Luckie Drive
Post Office Box 530886
Birmingham, Alabama 35253
205-879-1100
205-879-4300 (fax)
brogers@bainbridgemims.com
khamilton@bainbridgemims.com

---

³ Because the underlying claims in this suit fail by way of the statute of limitations or for failure to state a claim, the conspiracy claim also fails. *See Avis Rent A Car Systems, Inc. v. Heilman*, 876 So. 2d 1111, 1124 (Ala. 2003) ("A conspiracy cannot exist in the absence of an underlying tort. Liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy.") (citations omitted).

11

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of July, 2006 I electronically filed the foregoing **Motion to Dismiss** using the CM/ECF system which will send notification of such filing to the following:

Fred M. Haston, III
Brian A. Wahl
Andrew B. Johnson
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104

Kimberly Redman West
Wallace, Jordan, Ratliff & Brandt, LLC
Post Office Box 530910
Birmingham, Alabama 35243-0910

Pamela Beard Slate
Slate & Kennedy LLC
166 Commerce Street
Suite 350
Montgomery, Alabama 36104-2560

Josh J. Wright
Hollis & Wright, P.C.
505 North 20th Street
Suite 1750
Birmingham, Alabama 35203

                                          /s/ Charles K. Hamilton
                                          Of Counsel